JUDITH WEINSTEIN, Appellant, *v.* HAROLD J. LEVY, Respondent.

Second Department, April 29, 1963.

*Tell, Cheser, Werner & Breitbart (Solomon M. Cheser* of counsel), for appellant.

*Jerome Scharoff (Kenneth J. Jewell* of counsel), for respondent.

HILL, J. In this negligence action, the complaint, as amplified by the bill of particulars, alleges that on October 23, 1960, at about 1:30 A.M., plaintiff was a passenger in an automobile owned by defendant and operated by him on Beach Street and Yates Avenue, Nassau County; that defendant negligently proceeded at an excessive speed and, without warning, suddenly stopped short; that plaintiff was thereby precipitated violently forward from her seat in the car, striking her head against the windshield; and that as a result she sustained permanent injuries and was hospitalized for 16 days. It is further alleged that the permanent injuries include a fractured skull; organic brain damage resulting in dizzy spells, headaches, nausea and vomiting; a herniated disc; sciatica; and severe lumbar and cervical sprain with damage to the nerve roots in those areas, causing constant pain and irritation and rendering her " apprehensive, anxious and tremulous."

After joinder of issue the defendant obtained a physical examination of plaintiff on January 12, 1962 by a court-designated physician. A second physical examination, also pursuant to court order, was conducted on June 26, 1962 by a different physician. Both physicians found plaintiff, then 23 years of age, to be in a state of hysterical anxiety.

One of said physicians reported that: " The patient is a young girl who appears in good general health, but is obviously acutely anxious and severely worried. She walks with a good deal of difficulty, holding her trunk forward 15 degrees, and tilted ten degrees to the right. * * * [She] also has a marked anxiety state. * * * In my opinion, there has been increasing symptomatology because of this anxiety state. This is not necessarily a purposeful hysteria, but the patient's symptoms have increased markedly in little more than a year, despite

conservative treatment. I do not believe that formal orthopedic treatment or physiotherapy as the patient is receiving now * * * will help her. She does have a permanent partial disability, most of it I believe due to the anxiety state.''

The other physician reported that: '' Her present condition can be easily explained on the basis of a slowly progressive, gradually increasing, hysteria.'' He further stated that:

'' (a) Her headaches, located about the vertex, constant in nature, of boring type, like a ' plate on the head ' — is the ' clavus hystericus ' (so typical that it has been given a special name).

'' (b) The pain in the limbs, and spine, for which examination reveals no objective basis, is typical of hysterics.

'' (c) The unilateral numbness of the left lower extremity, into which a pin may be stuck deeply without even a muscle twinge in the leg, and which would be unbearable in a normal person,— with the total numbness extending all about the entire lower limb, is the typical ' high-stocking ' type of anesthesia of a hysteric. * * *

'' (e) Other findings are characteristic of hysteria by virtue of the changing nature of the deformity (such as the appearance and disappearance of dorsal lordosis) & [sic] the absence of set pattern (such as the bizarre hysterical gait, staggering in the direction of objects upon which to lean; etc. Her peculiar posture is known as ' camptocormia '.''

This physician further stated with respect to the future medical treatment and the possible permanency of plaintiff's ailments, that:

'' (a) Nothing can be done until her legal problem is settled. The chance of rapid and seemingly miraculous recovery thereafter is excellent. * * * The desired cure is to restore her to *status quo ante* of [sic] before the accident; & [sic] not to resolve the emotional problems and conflicts that have been built in since earliest childhood, & [sic] which created the neurotic personality and latent hysterical make-up upon which a not unusually severly auto-accident [sic] has produced the present conversion hysteria.

'' In other words, the responsibility of the accident is only toward her present hysteria, since the accident was apparently the exciting cause; without responsibility for the years of psychiatric analysis that would be necessary to make her a mature woman. The accident did not make her an immature woman.

'' (b) Type of treatment —

'' Discussion alone may be enough, (sympathetic understanding and reassurance);

" Not infrequently, the suggestion that she is physically well is given under hypnosis. (She could not be hypnotized before settling her legal case, because being still resistant to any suggestion that she is not sick, sick, sick,— the present symptoms would probably be replaced by different and perhaps worse symptoms (hysterical blindness, hysterical paralysis, etc.)

* * *

" This case is one for preference regarding a legal hearing, since hysterics who remain untreated for from 3–5 years usually develop hysterical paralysis, followed by dis-use atrophy and then fixed joint contractures, creating an actual physical and non-reversible disability which remains after the hysteria subsides."

Upon the basis of these reports plaintiff moved for a rule 151 preference in trial. The defendant made no attempt to contradict the diagnoses and prognoses of the reporting physicians; defendant simply attacked their diagnoses as speculative and conjectural. However, defendant submitted no report or affidavit by any physician to support his position. The motion was denied.

The examining physicians, who were designated by the court (see Civ. Prac. Act, § 306), presumably are impartial and disinterested witnesses (see *Goldenberg* v. *Zirinsky,* 114 App. Div. 827, 829). Their reports, which are not inherently improbable and which are not contradicted by any medical evidence, show: (1) that plaintiff suffers from an hysteric anxiety state induced by the accident; (2) that such hysteria cannot be effectively treated " until her legal problem is settled "; and (3) that if her "legal problem " remains unsettled for three to five years after the date of last examination (i.e., if she is not granted a preference), it is reasonably certain she will develop hysterical paralysis, " creating an actual physical and non-reversible disability which remains after the hysteria subsides."

Subdivision 3 of rule 151 of the Rules of Civil Practice authorizes a preference in the trial of any action " in which it is shown to the court * * * that the interests of justice will be served by an early trial or hearing thereof." We have consistently held that a preference will not be granted pursuant to this rule, unless it be shown: (1) that the plaintiff is financially destitute; or (2) that due to his age or the nature of his injuries he will not, in all probability, survive the trial (*O'Callaghan* v. *Brawley,* 276 App. Div. 908).

We are of the opinion that the language of rule 151 is sufficiently broad to include a case of this nature, i.e., where the unusual physical and mental condition of the plaintiff is estab-

lished convincingly and without contradiction by two successively court-designated physicians; where the condition has been corroborated by objective signs (a pin stuck deeply into the lower extremity without even a muscle twinge) as well as by subjective findings; and where denial of an early trial will, in all probability, result in " physical and non-reversible disability which remains after the hysteria subsides."

Under present court calendar conditions — with the long delay before a jury trial may be had in some counties — it is suggested that the granting of a preference in a case such as this may bring an influx of preference applications based on claimed litigation neuroses. Despite such a possibility, we are of the opinion that this case should be advanced for trial, since here we have a unique situation: the diagnosis of plaintiff's condition has been made by two court-designated physicians, acting independently; the diagnosis made by each was based upon objective as well as upon subjective findings; and both physicians stand unimpeached and their diagnoses remain unimpaired.

Although we are granting a preference because the unique situation here shows that " the interests of justice will be served by an early trial ", we nevertheless reaffirm our policy with respect to preferences, as defined in *O'Callaghan* v. *Brawley* (276 App. Div. 908, *supra*). We shall adhere to that policy in the absence of an extraordinary situation such as the one now before us.

The order should be reversed, with $10 costs and disbursements, and the motion should be granted.

KLEINFELD, Acting P. J., CHRIST, BRENNAN and HOPKINS, JJ., concur.

Order reversed, with $10 costs and disbursements, and motion granted.